UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA BURNS, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Judge Aspen |
| | ) | Case No. 1:17-cv-00917 |
| v. | ) ) | |
| RESPITE CARE/CARE IN THE HOME INC., and RUTH FRIEDMAN, individually | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER APPROVING SETTLEMENT,
SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS**

The above-entitled matter came before the Court on Plaintiff's Unopposed Motion to Certify a Collective Action Under Section 216(b) of the FLSA Solely for Settlement Purposes, for Approval of an Opt-in Settlement, for Appointment of Settlement Administrator, and For Approval of a Service Award and Attorneys' Fees and Costs ("Motion for Settlement Approval"). After reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in Support of the Motion for Settlement Approval (the "Memorandum"), the Declaration of Maureen A. Salas ("Salas Decl.") and the supporting exhibits, the Court hereby finds as follows:

**The Settlement Is Approved**

1. The Court approves and incorporates by reference all of the definitions contained in the Joint Stipulation of Settlement.

2. The Court certifies, for purposes of the Parties' Settlement, the following Settlement Class, for collective treatment pursuant to 29 U.S.C. § 216(b): (1) individuals who worked for

Respite Care/Care in the Home Inc. as Home Service Aides between February 3, 2014 and February 18, 2017, who were paid a day rate, and who worked at least four days in one or more individual work weeks in the Settlement Time Period. A list of all individuals meeting this definition, 94 persons, is attached as Attachment A to the Joint Stipulation of Settlement.

3. The Court hereby approves the Three Hundred Fifty Thousand and No/100ths Dollars ($350,000.00) collective action settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *see also Butler v. Am. Cable & Telephone, LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

4. Here, the settlement meets the standard for approval. The settlement was the result of contested litigation. Defendants denied that they violated the FLSA by requiring Home Service Aides to work more than forty (40) hours a week without the payment of overtime pay, and the settlement was the result of arm's-length negotiations conducted by experienced counsel over the period of six months and following the exchange of payroll and other financial records. Recognizing the uncertain legal and factual issues involved, the parties reached their settlement after Defendants produced and the Parties' reviewed comprehensive payroll data for Home Service Aides.

5. The formula for allocation of Settlement Payments set forth in the Settlement

Agreement is approved as a fair, equitable, and reasonable measure for distributing the settlement payment to the Settlement Class Members.

6. Analytics Consulting LLC is appointed to serve as the neutral, third-party Settlement Administrator in this case and to perform the duties identified in the Joint Stipulation of Settlement.

### The Settlement Procedure Is Approved

7. A one-step settlement approval process is appropriate. *See, e.g.*, *Briggs v. PNC Financial Services Group, Inc.,* No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate[]'" in FLSA settlements.); *Castillo v. Noodles & Co.,* No. 16-cv-030306, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

8. Within fourteen (14) days of entry of this Order, Defendants shall provide Plaintiffs'

Counsel and the Settlement Administrator with the following information for all Settlement Class Members: (i) name, (ii) last known addresses, (iii) employee ID number; and (iv) social security number ("Class Data").

9. Defendants are ordered to make payments and fund the Settlement Account in accordance with the terms of the Joint Stipulation of Settlement.

10. The plan for sending the Settlement Payments as described in the Joint Stipulation of Settlement is approved.

11. The Settlement Notice attached to the Joint Stipulation of Settlement as Attachment B is approved. The Settlement Administrator shall make any necessary corrections to the dates in the Settlement Notice. The direct issuance of settlement checks informs Settlement Class Members of the specific amounts of their individual Settlement Payments. The Settlement Notice sufficiently informs Settlement Class Members of the other key terms of the settlement, including how Settlement Class Members may participate (or not participate), how the Settlement Fund is being allocated, what the Settlement Payment represents, the scope of the release, and the request for attorneys' fees and costs. *See Koszyk*, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distributing Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same).

12. Each and every member of the Settlement Class who becomes an Opt-in Plaintiff shall be deemed to have fully, finally and unconditionally released and discharged, and to have covenanted and agreed not to sue, institute, or cause to institute any further proceedings in any court or comparable forum against, the Released Parties with respect to any and all claims or

causes of action arising during the Settlement Time Period that relate to allegations that they were not properly paid overtime wages when they worked for Defendant RespiteCare in the job position of Home Service Aide, including claims arising under the Fair Labor Standards Act, Illinois Wage Payment and Collection Act, Illinois Minimum Wage Act, and all other federal, state, and local law, or common law, as well as any related claims for liquidated damages, penalties, attorneys' fees and costs, expenses, and interest.

13. Settlement Class Members who do not negotiate their settlement check by the close of the Check Cashing Deadline will not release any claims against Defendants. However, the failure of Settlement Class Members to become Opt-in Plaintiffs will not toll or extend the statute of limitations periods for any claims or causes of actions they may have against Defendants. This language does not foreclose the possibility that tolling may be appropriate based on other facts and circumstances.

## The Service Award Is Approved

14. A service award of Ten Thousand and No/100ths Dollars ($10,000.00) to Named Plaintiff Lisa Burns is approved. The amount shall be paid from the Settlement Fund. Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers. *Beesley v. Int'l Paper Co.*, No. 06 C 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

15. Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77 (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

16. In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). An examination of these factors warrants the approval of the requested service award.

17. First, the Named Plaintiff took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to 95 Settlement Class Members, who will receive checks in amounts ranging from a minimum of $50.00 to a maximum of over $16,000. Courts in this Circuit and others have approved incentive awards for similar activities. See *Briggs,* 2016 WL 7018566, at * 3 (approving $12,500 service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo v. Noodles &*

*Company,* No. 16-cv-03036, 2016 WL 7451623 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards). Named Plaintiff Burns' actions have resulted in substantial benefit to the class.

18. Second, Burns undertook substantial direct and indirect risk. In agreeing to file this class action suit in her name, Plaintiff Burns undertook the significant risk that, "should the suit fail, [she could] find [herself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). Plaintiff Burns risked retaliation from future employers for the benefit of all Settlement Class Members. *See Beesley,* 2014 WL 375432, at *4 (recognizing that suits against former employers carry risks of professional and personal repercussions). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid,* 688 F.3d at 877; *accord Koszyk*, 2016 WL 5109196, at *3.

19. Third, Plaintiff Burns spent a significant amount of time and effort pursuing this litigation on behalf of the Settlement Class Members. Ms. Burns provided factual information and otherwise assisted Plaintiffs' Counsel with the prosecution of the litigation, answered Defendants' written discovery requests and produced documents responsive to Defendants' discovery requests. *Castillo,* 2016 WL 7451626, at * 3 (approving service award to named plaintiffs who participated in an extensive pre-suit investigation, provided documents crucial to establishing the claims, and assisting plaintiffs' counsel in analyzing documents during the informal discovery process).

20. Accordingly, a service award of $10,000.00 to Named Plaintiff Lisa Burns for her service to the Settlement Class Members of this collective action are approved.

### **Fees and Costs of the Settlement Administrator and Attorneys Are Approved**

21. The Court approves of the Settlement Administrator's fees and costs of $4,937 to Analytics Consulting LLC.

22. The Court grants Plaintiff's Counsel's request for one-third of the settlement, One Hundred Sixteen Thousand Six Hundred Sixty-Six and No/100ths Dollars ($116,666.66), as attorneys' fees.

23. In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid*, 264 F.3d at 718. District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

24. Plaintiff's request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois. *Taubenfeld,* 415 F.3d at 600 (approving attorneys' fees based, *inter alia*, on "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). Plaintiff's Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the Settlement Class Members.

25. Before initiating this litigation Plaintiff's Counsel agreed with the Named Plaintiff to request no more than one-third of any (at that time uncertain) future recovery. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*,

8

264 F.3d at 718, 720, because the Named Plaintiff contracted for Plaintiff's Counsel to be compensated with the amount Plaintiff's Counsel now seek, *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit").

26. It was reasonable for the Named Plaintiff to contract for one-third of the settlement fund to be paid to Plaintiffs' Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, confirming that plaintiffs routinely agree to a one-third contingency fee arrangement, reinforces that Plaintiffs' Counsel are requesting the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

27. Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Briggs,* 2016 WL 7018566, at *3 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $2,000,000 as attorneys' fees); *Castillo,* 2016 WL 7451626, at *4 (granting request for one-third of the settlement fund for attorneys' fees in FLSA collective action in the amount of $1,000,000 as attorneys' fees); *Koszyk*, 2016 WL 510916, at *3 (granting request for one-third of the settlement fund for attorneys' fees plus costs); *Watson,* No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF No. 34, 39 (same); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees

of 30-39% of the settlement fund); Alba Conte *et al.*, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]").

28. Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiff's Counsel faced. At the outset of the litigation, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent the Named Plaintiff. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiff's Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Plaintiff's Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiff's Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

29. Plaintiff's Counsel's request for reimbursement of Four Hundred Eighty Dollars and Thirty-Nine Cents ($480.39) in actual out-of-pocket expenses incurred in prosecuting this case, including costs for filing and service fees, and postage is granted. The Court finds these costs to be reasonably incurred.

### Dismissal and Post-Judgment Procedure

30. This case is dismissed without prejudice, with leave to reinstate within 165 days after entry of this Order. In the event a motion to reinstate is not filed within 165 days after entry of this Order, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

31. The Court will retain jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds.

32. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 1st day of March, 2018

_____
Honorable Marvin E. Aspen
United States District Judge